I do not see that the reversal by this court of the former judgment in this case settled any principles of law, which are in any way decisive of the present appeal Five judges concurred in the judgment of reversal. *Page 332 
Judge GOULD wrote an opinion for reversal, from which it would appear that the trial (not the transaction), was a tragedy oferrors. Judges DAVIES and SMITH are stated to have concurred — perhaps in the opinion, perhaps in the result. Judges DENIO and ALLEN were also for reversal — the latter on the ground of the plaintiff's negligence. Judge SUTHERLAND wrote a dissenting opinion. Judges SELDEN and WRIGHT were absent. I conclude that a majority of the judges did not express their concurrence in the views — certainly not in all of them — advanced by the learned judge who penned the leading opinion. I regard the case as open to the application of the principles which have been heretofore supposed pertinent to cases of this description; at all events as open to the consideration of the question, whether the facts, or the evidence of the facts, was so far varied on the trial now under review as to require the submission of those facts or that evidence to the jury.
There being no doubt that Wilds' death was occasioned by the defendants' locomotive engine, the two leading questions arose, as in nearly all cases of similar casualties. 1. Was such death occasioned by the defendant's negligence; and if so, 2. Did Wilds' own negligence, in part, contribute to the fatal result?
The particular aspect in which those questions were presented on this trial was: Was there sufficient evidence to go to the jury on these questions? If so, as the judge refused to submit the same to the jury, notwithstanding a request to that effect, there should be a new trial granted.
1. Was there evidence sufficient to go to the jury on the question of the negligence of the defendant's agents and servants? The principal facts relied upon for this purpose, in the present case, I understand to be four. 1st. The excessive speed of the train. 2d. The failure to wave a flag at the crossing. 3d. The want of a sufficient number of brakemen on the train. 4th. The failure on the *Page 333 
part of the officers and men managing the train to discover the danger in season to have prevented the accident.
Without reciting the evidence in detail, on all these points, I am of opinion, as I was on both of these trials at which I presided, that there was sufficient evidence to submit to the jury on the two leading points, to wit: Whether the defendants kept up a proper look out, and whether the rate of speed was not excessive and dangerous. On the first of these propositions there was much and I think preponderating evidence that the defendant's agents might, with proper watchfulness, have observed the danger at a much farther point from the point of collision than they did; and if so, the casualty would not probably have occurred. The crossing was in view for a considerable distance, and yet both the engineer and the fireman swear that they did not observe the deceased or his team until they were nearly upon them.
Upon the other point — the speed of the train — the evidence was conflicting, and such as, I think, would have required its submission to the jury, if that were the controlling point in the case. Two witnesses sworn on both trials for the plaintiff, Carroll and Gillespie, say, the one that the train was comingfast, which was not usual there, and the other that they were running very rapidly. Two other witnesses, O'Laughlin and Williams, not sworn on the first trial, testified on the second, the one that the train was running as fast as twenty miles an hour, the other between twenty and twenty-five miles an hour. There were other witnesses whose testimony tended to show a rapid rate of speed. Some five witnesses for the defendant testified in substance to their opinion that the train was running the usual speed — some five or six miles an hour. I do not think a verdict would have been set aside finding the higher rate of speed; and I do not hesitate to say that such a rate of speed across the crowded thoroughfares of so large a city is, in my opinion, indefensible. It is quite *Page 334 
clear that such a rate of speed, if it was maintained in the present case, caused the collision, and that the usual rate of speed would have prevented it.
The more important and difficult question is whether Wilds was guilty of negligence contributory to the accident. He is charged to have been guilty of negligence in several particulars: 1st. In want of attention to the usual signals — the bell, the whistle and the flag. 2d. In not observing, or wilfully disregarding, shouts and warnings of danger. 3d. In driving at an improper rate of speed, and manifesting a reckless determination to cross the track in the face of known and impending danger.
In reference to the signals of danger proper to be given by the defendants, it would appear that the bell was seasonably rung. Wilds may or may not have heard it. We cannot say that he did; others near him did not. We can scarcely say that it was negligence not to have done so. The whistle was sounded only just before the collision, and probably not in season to have given any useful warning to him. The flagman was at his post, and had been waving his flag, but was not in the act of doing so when Wilds approached the crossing. He appears to have been momentarily engaged in the praiseworthy act of warning away a woman who was approaching the crossing, and yet it may be that the absence of the usual flag signal may have induced Wilds to approach the crossing with less hesitation and care than he would otherwise have done. In none of these things does it appear to me was there such marked carelessness on his part as to have justified a refusal to submit the question to the jury.
He does not appear to have approached the crossing at an improper rate of speed, though there is some conflict of evidence on that point; but he is supposed to have been inattentive or recklessly indifferent to shouts of warning and danger. The question is, on the evidence given on the second trial, whether these warnings were in fact given. *Page 335 
Mrs. Banker swears that she gave them, but some doubt is thrown on her testimony by that of McLaughlin, a witness not sworn on the first trial, who was in a situation to hear, and did not hear the warning professed to have been given by Mrs. Banker. She is also contradicted or differed from by other witnesses. Orr swears that O'Brien gave the warning, but O'Brien does not say so himself, and both O'Brien and Orr are to some extent impeached by general evidence attacking their credibility as witnesses. And they are not supported by counter evidence. The question is whether, on this material part of the case, there was not sufficient doubt thrown upon the testimony of Banker, O'Brien and Orr, or contradiction given to it, to raise a question of credibility for the jury and not for the court. I incline to think, on the whole, that there was.
The remaining question is whether Wilds' approach to the place of collision, and attempt to cross the track, were marked by such evidences of carelessness or recklessness as should defeat the recovery. It is upon this part of the case that I have felt the greatest doubt. I should certainly have supposed it a more prudent act not to have attempted to cross the track, but that is not quite the question to be determined. It is whether, on the whole, it was a question for the jury — whether mis-judgment was such carelessness as should defeat the action — whether a man of ordinary prudence might not have doubted whether it were not probable the crossing could be safely effected and safer to attempt it than to run the hazard of the engine and train coming up directly in the face of the horses in close proximity to the track — whether the sudden and impending danger would not excuse an error of judgment or the failure to manifest that coolness and self-possession which, under ordinary circumstances, might be expected or demanded; and whether, on the whole, these were not more properly considerations to be addressed to the sound sense and temperate discretion of a jury, under cautious instructions *Page 336 
from the court, than such as should influence the court to take the matter into its own keeping and dispose of it upon its own responsibility, without the intervention of a jury. It is a case for doubt and hesitation, I think, as to which was the more proper course. And yet I am inclined to think it more consistent with the theory on which the right of trial by jury rests, and safer for the general interests of parties, to resolve such doubts in favor of the submission of such questions to the jury than the withdrawal of them from their consideration.
In arriving at this conclusion, I have done so upon the idea that it is ordinary care and prudence and not the highest and most extraordinary manifestations of those qualities which are exacted of persons circumstanced as Wilds was upon that occasion. The learned justice who pronounced the prevailing opinion in this court when the case was here formerly for review, supposes that all distinctions as to the different degrees of care requisite under such circumstances were intended to be obliterated by the judgment of this court; but I do not so regard it, and shall not come to such a conclusion until I see more conclusive evidence of such a determination than a careful review of the results arrived at in that case has led me to make.
In granting the non-suit at the circuit, I was governed by a wish to conform to what, on a hasty examination, I supposed to be the authoritative judgment of this court as declared in the opinion referred to; but a more careful revision of it, in the light of the facts of this case as compared with those then presented, has satisfied me that in arriving at the conclusion just expressed on this appeal, I am in no degree departing from the principles of the judgment then pronounced.
I am in favor of reversing the judgment of the supreme court, and ordering a new trial, with costs to abide the event. Judgment affirmed. *Page 337